FILED
COURT OF APPEALS
DIVISION II

2014 OCT 28 AM 10: 05

STATE OF WASHINGTON

BY_____
         DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44887-4-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| STEFFAN D. GALE, | |
| Appellant. | |

BJORGEN, A.C.J. — A jury found Steffan Gale not guilty of first degree assault and not guilty of second degree assault, but found Gale guilty of the inferior-degree offense of third degree assault. Gale appeals his conviction, asserting that the trial court erred by (1) granting the State's request to instruct the jury on the inferior-degree offense of third degree assault and (2) failing to accurately instruct the jury on the law of self-defense. Gale also asserts that the prosecutor committed misconduct at closing argument by misstating the law of self-defense. We affirm.

## FACTS

On May 16, 2012, Gale called Timothy Andrews, an admitted drug dealer, to ask if Andrews knew where to obtain methamphetamine, and Andrews told Gale to call him back later.

A short time later Gale's friend, Louisiana,[1] called Andrews and asked Andrews to sell him some crack cocaine. After Andrews told Louisiana that he did not have any crack cocaine, Louisiana asked Andrews to lend him some money. Andrews agreed and the two men met at a gas station. Andrews took approximately $1,500 from out of his pocket and handed Louisiana $20. Louisiana then grabbed all of Andrews's cash as well as Andrews's keys and fled the gas station.

Later that evening, Andrews called Gale and asked him to meet in the parking lot of a Tacoma Safeway grocery store. When the two met at the Safeway, Andrews told Gale that Louisiana had stolen his money and a set of keys, and he asked Gale to tell him where Louisiana lived. Gale refused and went inside the Safeway to purchase groceries. Andrews followed Gale into the store and the two men had a verbal confrontation. Andrews punched Gale and then Gale stabbed Andrews once in the bicep and once in the abdomen. Gale left the store and threw his knife away in an alley. Andrews screamed for someone to call 911. A Safeway employee wrapped a shirt around Andrews's arm to help control the bleeding. Andrews drove himself to a nearby hospital and was later transferred to a second hospital for surgery to treat his wounds. The State charged Gale with first degree assault and further alleged that Gale was armed with a deadly weapon when he assaulted Andrews.

At trial, Andrews testified that after Gale refused to tell him where Louisiana lived, he asked Gale if he could accompany him inside the Safeway to discuss the matter further and that Gale agreed. Andrews further testified that, once in the store, he confronted Gale and tried to convince Gale to tell him Louisiana's address. Andrews stated that Gale was "looking down at the food, but he was swinging back and forth . . . like he was going to hit me." Report of

---

[1] Gale testified that Louisiana's real name is Kevin Jones or Johnson, and that he also goes by the nickname Mack.

Proceedings (RP) at 136. Andrews continued, "So what I did was I kind of reached back with my chin like this so he wouldn't hit me, and I tried to hit him first." RP at 136-37. Andrews stated that after he hit Gale, Gale swung at him with a knife and stabbed him in the arm. Andrews said that Gale started running out of the store, but when he started yelling out Gale's name, Gale came back and stabbed him in the abdomen.

In contrast with Andrews's testimony, Gale testified that after he had refused to give Louisiana's address to Andrews, he was unaware that Andrews had followed him inside the Safeway. Gale stated that he was shopping when he heard Andrews behind him talking on the phone. Gale said he overheard Andrews tell the person on the phone, "[Gale] better take me over there, or I'm go[ing to] do something to him, too." RP at 487. Gale stated that he told Andrews, "You're not go[ing to] do [expletive]," and then Andrews hit him. RP at 489.

Gale also testified that, when Andrews hit him, he had been cleaning his nails with a knife contained within a small multi-purpose tool. Gale further testified that he did not intend to stab Andrews, but that he happened to have the knife in his hand when he swung at Andrews in self-defense. Gale stated, "I didn't know I was swinging the knife until it was over." RP at 516.

The trial court instructed the jury on the uncharged inferior-degree offenses of second degree assault and third degree assault over Gale's objection. Gale proposed the following self-defense jury instruction based on 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* (WPIC) 17.04 (3d ed. 2008):

> A person is entitled to act on appearances in defending himself, if he believes in good faith and on reasonable grounds that he is in actual danger of injury, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful.

3

No. 44887-4-II

Clerk's Papers (CP) at 50. The trial court declined to give Gale's proposed self-defense jury instruction, reasoning:

> And 17.04, the WPIC discussion of that is, that is generally not given unless it's a situation where someone thinks they are go[ing to] suffer injury from someone else; although, it's later shown to have been an erroneous belief. That's not really what we have here. Because we have here, your theory of the case is that Andrews swung and hit your client, and your client responded. So it's not really he thought there was an appearance that he was going to be injured.

RP at 567-68. The trial court instructed the jury on self-defense based on WPIC 17.02 as follows:

> It is a defense to a charge of assault that the force used was lawful as defined in this instruction.
> The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured, in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
> The state has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.

CP at 85. The jury returned verdicts finding Gale not guilty of first degree assault and the inferior-degree offense of second degree assault, and guilty of the inferior-degree offense of third degree assault. Gale timely appeals.

ANALYSIS

I. THIRD DEGREE ASSAULT JURY INSTRUCTION

Gale first contends that the trial court erred by instructing the jury on the uncharged inferior-degree offense of third degree assault absent affirmative evidence that he committed only that offense. We disagree.

4

"As a general rule, criminal defendants are entitled to notice of the charge they are to meet at trial and may be convicted only of those crimes charged in the information." *State v. Tamalini*, 134 Wn.2d 725, 731, 953 P.2d 450 (1998). However, RCW 10.61.003 provides an exception to this general rule for uncharged crimes of an inferior degree to a crime charged in the State's information. *State v. Fernandez-Medina*, 141 Wn.2d 448, 453, 6 P.3d 1150 (2000). RCW 10.61.003 provides:

> Upon an indictment or information for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment or information, and guilty of any degree inferior thereto, or of an attempt to commit the offense.

Before a trial court may instruct the jury on an uncharged inferior-degree offense, the following three factors must be met:

> "(1) the statutes for both the charged offense and the proposed inferior degree offense 'proscribe but one offense'; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*Fernandez-Medina*, 141 Wn.2d at 454 (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997)). Gale challenges the third factor, contending that the evidence presented at trial was insufficient to support the jury finding that he committed only third degree assault.

In reviewing whether evidence was sufficient to support a trial court's decision to instruct the jury on an uncharged inferior-degree offense, we view the evidence in a light most favorable to the instruction's proponent, here the State. *Fernandez-Medina*, 141 Wn.2d at 455-56. Evidence in support of an uncharged inferior-degree offense instruction must consist of more than the jury's disbelief that the defendant committed the superior-degree offense and, instead, "must affirmatively establish the defendant's theory of the case." *Fernandez-Medina*, 141

5

Wn.2d at 456. In other words, the trial court should instruct the jury on an uncharged inferior-degree offense only "[i]f the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater." *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997) (citing *Beck v. Alabama*, 447 U.S. 625, 635, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980)). We review de novo a trial court's decision whether to instruct the jury on an uncharged inferior-degree offense. *State v. Corey*, 181 Wn. App. 272, 276, 325 P.3d 250, *review denied*, ___ P.3d ___ (2014).

Here, the State charged Gale with first degree assault under RCW 9A.36.011(1)(a), which statutory provision provides:

> (1) A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm:
> (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm.

Third degree assault is an inferior-degree offense to first degree assault. *State v. Walther*, 114 Wn. App. 189, 192, 56 P.3d 1001 (2002). RCW 9A.36.031 defines third degree assault in relevant part as follows:

> (1) A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree:
> . . . .
> (d) With criminal negligence, causes bodily harm to another person by means of a weapon or other instrument or thing likely to produce bodily harm.

Here, Gale's own testimony provided affirmative evidence to support the jury finding that he committed third degree assault to the exclusion of first degree assault. Gale testified that he did not intend to stab Andrews and that he did not realize that he was swinging a knife until after Andrews had been stabbed. If the jury believed Gale's testimony, it could rationally find that he acted with criminal negligence, rather than with intent, when causing bodily harm to

Andrews with a weapon or instrument likely to produce bodily harm. RCW 9A.36.011(1)(a); RCW 9A.36.031(1)(d); *Warden*, 133 Wn.2d at 563. Accordingly, affirmative evidence presented at trial permitted the jury to find Andrews guilty of third degree assault and, thus, the trial court did not err by instructing the jury on the inferior-degree offense of third degree assault.

## II. SELF-DEFENSE

Next, Gale contends that the trial court erred by failing to accurately instruct the jury on the law of self-defense. Again, we disagree.

Jury instructions are sufficient where the instructions allow the parties to argue their theories of the case, are not misleading, and properly inform the jury of the applicable law when read as a whole. *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013). Jury instructions on the law of self-defense "must make the relevant legal standard manifestly apparent to the average juror." *McCreven*, 170 Wn. App. at 462 (internal quotations omitted). Although a trial court commits reversible error by refusing to give a proposed instruction where the absence of the instruction prevents the defendant from presenting his theory of the case, a trial court does not err by refusing a proposed jury instruction where the subject matter of the proposed instruction is adequately covered in the other instructions. *State v. Kidd*, 57 Wn. App. 95, 99, 786 P.2d 847 (1990).

Gale argues that the trial court erred by refusing to provide the jury with WPIC 17.04's "act on appearances" self-defense instruction because, absent that instruction, the jury was not informed that it had to view the incident from Gale's perspective when evaluating whether his use of force was justified under the circumstances. Br. of Appellant at 22. In support of this argument, Gale relies on *State v. LeFaber*, 128 Wn.2d 896, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009). In *LeFaber*, our

Supreme Court reversed the defendant's first degree manslaughter conviction, holding that the trial court's self-defense jury instruction erroneously required the jury to find actual danger of imminent harm to accept the defendant's self-defense claim. 128 Wn.2d at 898-903. There, the trial court instructed the jury on the law of self-defense as follows:

> It is a defense to a charge of Murder in the Second Degree, Manslaughter in the First Degree, and Manslaughter in the Second Degree that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the lawful defense of the defendant or any person in the defendant's presence or company when the defendant reasonably believes that the person slain intends to inflict death or great personal injury *and there is imminent danger of such harm being accomplished.*
>
> The defendant may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the defendant taking into consideration all the facts and circumstances known to the defendant at the time and prior to the incident. The force employed may not be more than is necessary.
>
> The State has the burden of proving beyond a reasonable doubt that the homicide was not justifiable.

*LeFaber*, 128 Wn.2d at 898-99 (emphasis added). The *LeFaber* court held that the structure of the italicized language above permitted an erroneous interpretation of the law of self-defense as requiring "actual danger" to justify the use of force, because the instruction did not clearly indicate a link between the "defendant['s] reasoanbl[e] belie[f]" and an "imminent danger" of harm. 128 Wn.2d at 901-03.

The trial court's self-defense jury instruction here contained no such infirmity and clearly indicated to the jury that it was to view the threat of injury from Gale's perspective when evaluating whether his use of force was justified, stating:

> The use of force upon or toward the person of another is lawful when used by a person *who reasonably believes that he is about to be injured*, in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary.
>
> The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions *as they*

8

*appeared to the person*, taking into consideration all of the facts and circumstances *known to the person* at the time of and prior to the incident.

CP at 85 (emphasis added). Because the trial court's self-defense jury instruction adequately conveyed that the jury was to view any threat of injury to Gale from Gale's perspective under the circumstances as they appeared to him when evaluating whether his use of force was justified, the trial court did not err by refusing to further provide the jury with Gale's requested WPIC 17.04 "act on appearances" instruction. *Kidd*, 57 Wn. App. at 99.

Moreover, the evidence at trial did not support an "act on appearances" self-defense instruction because it was uncontested that Andrews struck Gale moments before Gale stabbed him. Thus, the question before the jury with regard to Gale's self-defense claim was not whether he acted on a reasonable yet mistaken belief that he was about to be injured, but rather, whether stabbing Andrews was a reasonable and proportionate response to the threat of injury posed by Andrews striking him. Because the trial court's self-defense jury instruction adequately conveyed the law of self-defense and because Gale's requested instruction was not supported by the evidence at trial, his claim of instructional error fails.

### III. PROSECUTORIAL MISCONDUCT

Next, Gale argues that the State misstated the law at closing argument by telling the jury, "You don't get to stab an unarmed man. Don't let him get away with it." RP at 691. In raising this argument, Gale does not appear to assert that the prosecutor's statement, alone, constituted misconduct warranting a new trial. Instead, Gale contends that any error in the trial court's refusal to give his proposed self-defense instruction was "exacerbated" by the prosecutor's misstatement of the law. Br. of Appellant at 27. However, we have held that the trial court

properly instructed the jury on the law of self-defense and that Gale was not entitled to his proposed self-defense jury instruction.

Although it is not clear from his brief, to the extent that Gale claims that the prosecutor's statement constituted misconduct warranting a new trial, we reject that claim as well. A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). We review a prosecutor's statements at closing in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003); *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). A prosecutor has wide latitude in making arguments to the jury and may draw reasonable inferences from the evidence. *Fisher*, 165 Wn.2d at 747.

Defense counsel's failure to object to prosecutorial misconduct at trial constitutes waiver on appeal unless the misconduct is "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" and is incurable by a jury instruction. *Fisher*, 165 Wn.2d at 747 (quoting *State v. Gregory*, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)) (internal quotation marks omitted). In analyzing a prosecutorial misconduct claim, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). "'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 172 Wn.2d at 762 (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

10

We discern nothing improper in the prosecutor's closing argument when viewed in context. At closing the prosecutor argued:

[Defense counsel] told you that you could use whatever is in your hand. Does that mean if someone is in your face yelling at you and you got a gun, you can shoot him? I wouldn't advise that you do that.

The instructions are there for a reason, so attorneys, prosecutors and defense, can't interject their own personal values into the case. Read the instructions. Don't let the defendant get away with this. No matter what happened, whether you believe that he got punched at first—let's say he did get punched and he stabbed him and he stabbed in the arm in self-defense. What about this part right here? What about the second attack? He pursued him. Don't let him get away with it.

He told Mr. Andrews that he wasn't going to do [expletive], and on that day, he was right. Because he is the one who did it. He stabbed a man who was unarmed. When you read the self-defense instruction, you are going to see that you can't do that.

They were at Safeway, and you are going to take into [account] all the factors that were involved that day, they were inside of Safeway. This wasn't a back alley. They were arguing, but it wasn't any shouting. Mr. Andrews wasn't in his face. *You don't get to stab an unarmed man. Don't let him get away with it.* Find him guilty. Thank you.

RP at 690-91 (emphasis added).

In stating that, "You don't get to stab an unarmed man," the prosecutor clearly referred to the self-defense jury instruction's requirement that the amount of force employed must not exceed that which a "reasonably prudent person would use under the same or similar conditions as they appeared to [Gale] person, taking into consideration all of the facts and circumstances known" "to [Gale] at the time of and prior to the incident," which argument simply rebutted defense counsel's argument that Gale's conduct in stabbing Andrews was a reasonable response to having been punched. RP at 691; CP at 85. Viewed in context, the prosecutor did not argue that it could never be justifiable to stab an unarmed assailant, but rather, that the facts and circumstances that were present to Gale did not justify his conduct in stabbing Andrews.

11

Moreover, even if the prosecutor had misstated the law on self-defense, such a misstatement could have been cured by a jury instruction had defense counsel objected at trial. Therefore, this challenge is waived. Accordingly, we affirm Gale's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

MAXA, J.

MELNICK, J.