IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| STATE OF WASHINGTON, | No. 79586-4-I |
| Respondent, | |
| v. | |
| FAWN LEFAY LITTLE SKY, | UNPUBLISHED OPINION |
| Appellant. | |

VERELLEN, J. — Fawn Little Sky appeals her jury conviction for second degree assault and violation of a no-contact order. She argues that the trial court erred in (1) giving an aggressor instruction, (2) giving a to convict instruction that did not include the State's burden to disprove self-defense, and (3) permitting a police officer to give improper opinion testimony regarding the ultimate issue to be decided by the jury. She also contends that defense counsel was ineffective for failing to object to the aggressor instruction.

We affirm.

FACTS

This case arises from an incident in which Little Sky assaulted her cousin, Jerry Clown. Clown lived in a house owned by his aunt, Carol Rave, who is Little Sky's mother. Also living in the house were Little Sky's adult son, Elijah Little

Sky, and Little Sky's brother, Luta Martinez. Little Sky frequently stayed at the home even though she was prohibited from doing so by a no-contact order.

Clown suffered from chronic health issues, including hypertension, diabetes, and kidney failure. He used a cane to walk and attended kidney dialysis appointments several times a week. On the morning of November 6, 2018, Clown drove Rave's car to his appointment. When Clown returned home around 11:30 a.m., he was tired and went to sit in a recliner in the living room, facing the television. Martinez and Elijah were both still in their bedrooms.[1]

Clown heard someone coming down the stairs behind him. He turned around and saw a man he didn't know. Clown asked the man who he was, but the man just put on his shoes and left.

Little Sky came downstairs a few minutes later. She asked Clown where the man went, and Clown told her that he left. Little Sky began looking for Rave's car keys. She asked both Clown and Martinez where the car keys were. Clown ultimately told Little Sky that he had them. Little Sky demanded the keys, but Clown refused. He believed Little Sky was under the influence of methamphetamine because she was acting "[v]ery angry" and "short-tempered" and because he could smell the odor of methamphetamine.[2] Clown turned his back on Little Sky and resumed facing the television.

Clown testified he felt something hit him on the back of his neck. He turned and saw Little Sky was holding his wooden cane and swinging it. Clown

---

[1] We refer to Elijah Little Sky by his first name for clarity.

[2] Report of Proceedings (RP) (Feb. 5, 2019) at 223.

was unable to get out of the recliner and raised his hands to defend himself.  He was hit on the hands and forearms with the cane.  Clown yelled for Martinez to come help him.  Little Sky continued hitting Clown with the cane until it broke into pieces.  She then advanced on Clown as though to stab him with the broken cane handle, yelling "die mother fucker, handicapped, fuckin' die.  I hate you.  I hate you."[3]  Clown rolled from side to side to avoid being stabbed.  When Martinez came running down the stairs, Little Sky threw the handle at Clown and left the house.  According to Martinez, Clown was crying and said that Little Sky had broken his arm.

Clown called 911, and Martinez drove Clown to the hospital.  Clown told the emergency room physician that he was hit in the head with his cane and saw bright flashing lights.  The physician noted obvious injuries to Clown's forearms, and x-rays showed fractures to Clown's left wrist and left thumb.  The physician did not document any injuries to Clown's head or neck.

Bellingham Police Officer McKenzie Roorda interviewed Clown at the hospital.  Roorda testified that Clown appeared in pain and had obvious injuries to his hands and wrists.  When Roorda asked Clown what happened, Clown began crying and said that Little Sky hit him from behind with his cane and he sustained the injuries by putting up his hands to protect his head.

Elijah confirmed that he could hear Little Sky yelling and upset because she wanted the car keys.  He testified that Little Sky was acting impatient,

---

[3] Id. at 227.

3

aggressive, and seemed to be under the influence of something. Martinez also stated that Little Sky was cursing and screaming regarding the car keys.

Little Sky asserted she acted in self-defense. She testified Clown was irritable from dialysis and angry that she had brought a man into the house. According to Little Sky, she calmly asked Clown for the car keys, but Clown ignored her. He then told her "you ain't getting the F'in car keys."[4] The two began arguing and Clown "just stood up, like leapt up real fast."[5] Little Sky testified that Clown "lunged" at her and hit her on the side of her arm.[6] She stated that she was afraid because Clown had "threatened to fight [her] before"[7] and had a history of assaulting other female family members. Accordingly, she grabbed the first thing she saw to defend herself, which was Clown's cane. She testified that she was "swinging wildly"[8] and did not realize she hit Clown until the cane broke. Little Sky denied hitting Clown from behind. She also denied being under the influence of alcohol or drugs.

Little Sky requested the jury be instructed on self-defense. The State also requested, and the court granted, an aggressor instruction. The instruction, patterned on 11 Washington Practice: Pattern Jury Instructions Criminal § 16.04, at 256 (4th ed. 2016) (WPIC), read:

---

[4] RP (Feb. 6, 2019) at 409.

[5] Id. at 411.

[6] Id. at 412.

[7] Id. at 411.

[8] Id. at 412.

No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.[9]

Defense counsel agreed to the instruction:

As far as the State's supplemental instructions this morning, we have got a first aggressor instruction and reasonableness instruction, and I think those are both appropriate under the circumstances, and I have no objection to them.[10]

In closing argument, the State argued that Little Sky's claim of self-defense was not credible because Clown's medical issues would have prevented him from threatening Little Sky in the manner she claimed. The State also argued that Little Sky was not entitled to claim self-defense because she was the aggressor:

[I]f you find beyond a reasonable doubt that the defendant was the aggressor and it was the defendant's acts and conduct that provoked or commenced the fight, then self-defense is not available as a defense.

Jerry is sitting in his chair and he is watching television, she comes downstairs, she wants the car keys, and he says no. She instigated the entire event. She is not entitled to be claiming self-defense in this case. For those reasons, I'll ask that you find her guilty as charged.[11]

A jury convicted Little Sky of second degree assault and violation of a no-contact order.[12] Little Sky appeals.

---

[9] Clerk's Papers (CP) at 37.

[10] RP (Feb. 7, 2019) at 484.

[11] Id. at 531-32.

[12] The jury acquitted Little Sky of first degree burglary.

DISCUSSION

Little Sky contends that the trial court erred in giving an aggressor instruction because the evidence did not support it.  Because Little Sky failed to object to the instruction at trial, she has waived any claim of error.

We review jury instructions de novo.[13]  Jury instructions are proper when they permit the parties to argue their theory of the case, do not mislead the jury, and correctly inform the jury of the applicable law, including the State's burden of proof.[14]

A defendant may claim he or she acted in self-defense where the defendant has a subjective, reasonable belief of imminent harm from the victim.[15] The amount of force used must be "not more than is necessary."[16]  A defendant is entitled to a self-defense instruction when he or she meets the "'initial burden of producing some evidence that his or her actions occurred in circumstances amounting to self-defense.'"[17]  Because self-defense negates the unlawfulness element of an assault, the State then bears the burden of disproving the defense beyond a reasonable doubt.[18]

---

[13] State v. Clausing, 147 Wn.2d 620, 626-27, 56 P.3d 550 (2002).

[14] State v. Willis, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005).

[15] State v. Werner, 170 Wn.2d 333, 337, 241 P.3d 410 (2010).

[16] RCW 9A.16.020(3).

[17] State v. Grott, 195 Wn.2d 256, 266, 458 P.3d 750 (2020) (quoting State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999)).

[18] State v. McCullum, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983).

However, a defendant may not claim self-defense when he or she initiated the fight, and thereby, the need to act in self-defense.[19] A court may give an aggressor instruction where there is credible evidence that the defendant provoked the need to act in self-defense.[20] The provoking conduct must be intentional conduct reasonably likely to elicit a belligerent response and cannot be words alone.[21] It also may not be the conduct that forms the basis for the assault.[22]

Little Sky argues that the evidence did not warrant the giving of an aggressor instruction. She argues that, at most, the evidence showed that she argued with Clown over the car keys, but that this is insufficient to establish she provoked the conflict.

In this regard, we agree with Little Sky. The State's theory of the case was that Little Sky assaulted Clown while Clown did nothing other than cover his face with his hands and arms. Little Sky's version of events was Clown initiated the conflict by striking her arm and she only hit Clown with the cane to protect herself. A jury could believe either that Little Sky assaulted Clown without provocation or that Little Sky acted in self-defense, but there was no evidence from which a jury could conclude that Little Sky provoked an altercation resulting in Clown needing to defend himself with lawful force.

---

[19] Riley, 137 Wn.2d at 909-10.

[20] State v. Kidd, 57 Wn. App. 95, 100, 786 P.2d 847 (1990).

[21] State v. Sullivan, 196 Wn. App. 277, 289-90, 383 P.3d 574 (2016); Riley, 137 Wn.2d at 912.

[22] Kidd, 57 Wn. App. at 100.

However, Little Sky did not object to the giving of the instruction. When a defendant does not object to a jury instruction below, review is precluded unless the defendant can demonstrate a "manifest error affecting a constitutional right."[23] We first determine whether the alleged error raises a constitutional interest, as compared to another form of trial error.[24] If the alleged error raises a constitutional interest, we look to whether the error is manifest. To be "manifest" requires a showing of actual prejudice.[25] "To demonstrate actual prejudice, there must be 'a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'"[26]

The Washington Supreme Court recently held in State v. Grott that not all erroneously given aggressor instructions are errors of constitutional magnitude.[27] This is because although an aggressor instruction impacts a defendant's claim of self-defense, it does not relieve the State of its burden of proof.[28] Instead, an aggressor instruction is "used to explain to the jury one way in which the State may meet its burden: by proving beyond a reasonable doubt that the defendant provoked the need to act in self-defense."[29] If the jury is properly instructed on self-defense, the defendant is not prevented from arguing self-defense, and

---

[23] RAP 2.5(a)(3).

[24] State v. O'Hara, 167 Wn.2d 91, 98, 219 P.3d 756 (2009).

[25] State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007).

[26] O'Hara, 167 Wn.2d at 99 (alteration in original) (internal quotation marks omitted) (quoting id.).

[27] 195 Wn.2d 256, 268-69, 458 P.3d 750 (2020).

[28] Id. at 268.

[29] Id.

because the aggressor instruction properly holds the State to its burden of proof by requiring the jury to "find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight," the giving of an instruction is not an error of constitutional magnitude.[30]

Here, the trial court instructed the jury on self-defense, and Little Sky was fully able to present her theory of self-defense to the jury. Moreover, the jury instructions properly held the State to its burden of proof. Consequently, Little Sky fails to demonstrate an error of constitutional magnitude entitling her to review.

In the alternative, Little Sky contends she received ineffective assistance of counsel when defense counsel failed to object to the aggressor instruction. We disagree because Little Sky fails to show she was prejudiced by the instruction.

We review ineffective assistance claims de novo.[31] "To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) defense counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant."[32] The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the

---

[30] Id. at 268-69.

[31] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[32] Id. (citing State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

challenged conduct.[33]  To show prejudice, the defendant must show that but for

the deficient performance, there is a reasonable probability that the outcome

would have been different.[34]  Failure on either prong defeats a claim of ineffective

assistance of counsel.[35]

Based on the record, we conclude Little Sky fails to make a plausible

showing she was prejudiced by the aggressor instruction.  The jury was

adequately instructed on self-defense including, as discussed below, the State's

burden of proof.  Little Sky was fully able to present her theory of self-defense.

Additionally, there was overwhelming evidence Little Sky did not act in self-

defense.  Clown had significant medical problems, used a cane for mobility, and

was exhausted from kidney dialysis.  Both the hospital physician and the

investigating officer observed significant defensive wounds on his hands and

forearms.  Clown, Martinez, and Elijah all testified that Little Sky was acting angry

and aggressive, which Clown and Elijah believed to be due to her use of

methamphetamine.  Even if the jury had believed Little Sky's version of events,

the amount of force she used—which resulted in fractures to Clown's thumb and

wrist—far exceeded what was reasonable and necessary for self-defense.  The

State presented sufficient evidence to disprove Little Sky's claim of self-defense,

and there is no reasonable probability that the outcome of the trial would have

---

[33] McFarland, 127 Wn.2d at 336.

[34] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

[35] State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

been different had defense counsel objected to the aggressor instruction. Little Sky fails to show she received ineffective assistance of counsel.

Little Sky also contends the trial court erred in denying her request to include the State's burden to disprove self-defense in the to convict instruction for second degree assault. We disagree, as the jury instructions as a whole properly informed the jury of the State's burden of proof regarding self-defense.

The to convict instruction for second degree assault provided:

> To convict the defendant of count 2, the crime of assault in the second degree, each of the following two elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about November 6, 2018, the defendant:
>
> (a) intentionally assaulted Jerry Clown and thereby recklessly inflicted substantial bodily harm; or
>
> (b) assaulted Jerry Clown with a deadly weapon; and
>
> (2) That this act occurred in the state of Washington.[36]

The court gave a separate instruction, patterned after WPIC 17.02, regarding Little Sky's self-defense claim:

> It is a defense to an assault that the force was lawful as defined in this instruction.
>
> . . . .
>
> The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to any charge in which the State must prove an assault as an element of the offense.[37]

---

[36] CP at 26.

[37] CP at 34.

The trial court rejected defense counsel's request to incorporate the State's burden to disprove self-defense into the to convict instruction, stating, "I would be reluctant to change the pattern instruction on that issue in this case."[38]

In State v. Hoffman, the Washington Supreme Court held that the to convict instruction need not refer to the State's burden to prove the absence of self-defense, as long as that burden is made clear through a separate instruction.[39] Little Sky contends Hoffman is not controlling because it did not involve an aggressor instruction. She argues that the erroneous aggressor instruction confused the jury and allowed it to disregard her claim of self-defense. But it is unquestionable that the jury instructions accurately stated the law regarding the State's burden to disprove self-defense. And Little Sky does not articulate how including the State's burden in the to convict instruction would eliminate the alleged prejudice of an erroneous aggressor instruction. In essence, Little Sky is restating her challenge to the giving of the aggressor instruction, an argument we have already rejected. Little Sky fails to demonstrate any error in the to convict instruction.

Finally, Little Sky contends the trial court erred when it permitted Roorda to testify that the cane Little Sky used to hit Clown was capable of causing substantial bodily harm. She contends this constitutes an impermissible opinion

---

[38] RP (Feb. 7, 2019) at 489.

[39] 116 Wn.2d 51, 109, 804 P.2d 577 (1991).

on the ultimate issue for the jury.  Even assuming the testimony was improper,

any error was harmless.

During Roorda's testimony, the following exchange took place:

STATE:  Okay.  And I showed you earlier the cane depicted by photograph. I'm handing you what has been entered into evidence as State's Exhibits 1B and 1C, is that the same cane depicted in photograph Exhibit No. 2?

ROORDA:  Yes.

STATE:  And in your opinion is this an item that is capable, readily capable of causing substantial bodily harm?

DEFENSE:  Objection to speculation, Your Honor.

ROORDA:  Yes.

DEFENSE:  Also invades the province of the jury.

STATE:  It's an opinion on ultimate issue which should be allowed under Evidence Rule 704.

COURT:  Overruled.  You may answer the question.

ROORDA:  Yes, it is.[40]

As charged here, the State was required to prove Little Sky either

intentionally assaulted Clown and recklessly inflicted substantial bodily harm or

assaulted Clown with a deadly weapon.[41]  The jury instructions defined

"substantial bodily harm" as "bodily injury that involves a temporary but

substantial disfigurement, or that causes a temporary but substantial loss or

---

[40] RP at 349-50.

[41] See RCW 9A.36.021(a); (c).

impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part."[42]

We review a trial court's evidentiary rulings for abuse of discretion.[43] ER 701 allows testimony as to opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. But a witness may not offer an opinion on the guilt or veracity of the defendant because it is unfairly prejudicial and invades the exclusive province of the jury.[44]

Here, even if admitting Roorda's testimony was error, it was harmless. "Where evidence is improperly admitted, the trial court's error is harmless 'if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.'"[45] The fact that the cane inflicted substantial bodily harm was not in dispute. Clown sustained fractures to his wrist and thumb. The jury was properly instructed that "a fracture of any bodily part" constituted substantial bodily harm. Because there was overwhelming evidence Clown suffered substantial bodily harm, a reasonable jury would have reached the same

---

[42] CP at 24.

[43] State v. Halstien, 122 Wn.2d 109, 126, 857 P.2d 270 (1993).

[44] State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001) (quoting State v. Carlin, 40 Wn. App. 698, 701, 700 P.2d 323 (1985), overruled on other grounds by City of Seattle v. Heatley, 70 Wn. App. 573, 854 P.2d 658 (1993)).

[45] State v. Yates, 161 Wn.2d 714, 764, 168 P.3d 359 (2007) (quoting State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)), cert. denied sub nom. Yates v. Washington, 554 U.S. 922, 128 S. Ct. 2964, 171 L. Ed. 2d 893 (2008).

determination regardless of Roorda's testimony.  Therefore, we hold that any error in admitting this evidence was harmless.

Affirmed.

_____

WE CONCUR:

_____   _____