[No. 7093–6–II.   Division Two.   May 15, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBIN
LEIGH WALKER, *Appellant.*

*Karen L. Unger,* for appellant (appointed counsel for appeal).

*David Bruneau, Prosecuting Attorney,* for respondent.

ALEXANDER, J.—Robin Leigh Walker appeals a jury conviction of second degree assault, challenging the trial court's instructions on self–defense. We find no merit in her contentions and affirm the conviction.

In the early morning hours of April 15, 1982, Deane Walker was stabbed in the back with an 8–inch butcher knife by his estranged wife, the defendant, in an apartment the couple had shared during their marriage. Mrs. Walker did not deny stabbing her husband, but asserted that her action was in self–defense. She claimed that Mr. Walker would have struck her if she had not acted first. The State charged Mrs. Walker with second degree assault.

At trial, the State presented evidence that the stabbing occurred as a result of jealousy because Mr. Walker was seeing another woman. The Walkers began living together in May 1979 and married in December 1981 shortly after the birth of their daughter. Their relationship was stormy, being marked by a pattern of frequent separations and reconciliations. During their brief marriage, the parties separated twice, the final separation occurring 3 weeks before the stabbing.[1] During their separations, Mr. Walker dated other women at times. The most recent relationship began shortly after the Walkers' final separation when Mr. Walker began dating Lola Loomis, who lived in the same apartment complex as the Walkers. Mrs. Walker nevertheless desired a reconciliation, extending an invitation to her husband to return; the couple spent the evening of April 12 together.

On April 14, 1982, Mrs. Walker had dinner with her husband's family. Mr. Walker's mother testified that Mrs. Walker told her that "if [she] saw them [Deane and Lola] together or caught them together [she] was going to kill him [Deane]." Following dinner, Mrs. Walker went to a local Port Angeles tavern where she consumed several beers before departing at about 1:30 a.m. with Randy Cawyer, a friend she had met at the tavern. Upon returning to her

---

[1]Divorce proceedings, however, were not commenced until after the stabbing.

apartment, Mrs. Walker observed her husband's truck parked near Ms. Loomis' apartment building. She then parked her car, started Mr. Walker's truck, and moved it out of its stall into the center of the parking lot, leaving the headlights on and honking the horn. Mr. Walker, who was watching television at Ms. Loomis', heard the horn and went to investigate. Mr. Walker noticed from the apartment window that his truck had been moved and Mrs. Walker's car was parked nearby. He then went to move his truck.

In the meantime, Mrs. Walker and Mr. Cawyer returned to her apartment. Mrs. Walker then called Ms. Loomis twice to "make sure Deane . . . knew [she] moved the truck." According to Ms. Loomis, Mrs. Walker directed profanities, threats and abusive comments to her. During direct examination, Mrs. Walker admitted that she "asked her [Ms. Loomis] if she wanted to meet . . . in the parking lot and fight." She made this threat "[b]ecause . . . [she] wanted to get . . . [her] point across that . . . [she] was still very much in love with . . . [her] husband and wanted him back."

After securing his truck, Mr. Walker went to his wife's apartment to retrieve his key. The door was "wide open" and he walked in. Observing that Mrs. Walker was not in the living room, Mr. Walker moved toward the kitchen. Mr. Cawyer, who was in the living room, called out "here comes Deane." In the kitchen, Mr. Walker asked for his keys. Mrs. Walker did not respond. Noticing a ring of keys lying on the kitchen counter about 8 feet away, Mr. Walker walked past his wife toward the counter. With his back toward her, he started thumbing through the keys when he felt something in his back and heard his wife shout "[t]here, you son of a bitch. . . ." as she stabbed him.

Mrs. Walker claimed that she acted in self–defense. Her theory was that because of her intimate familiarity with her husband's physical and verbal abuse, she knew that upon observing his "angry" presence in the kitchen she was in serious danger of grievous bodily harm.

The defense first presented extensive expert testimony from a clinical psychologist to describe the "battered woman syndrome." It was this expert's opinion that Mrs. Walker displayed the behavioral and emotional characteristics of a "battered woman." The expert conceded during cross examination that computer analysis of the defendant's responses to a Minnesota Multiphasic Personality Inventory revealed that Mrs. Walker exhibited antisocial behavior and suffered from a paranoid personality disorder. However, the expert disagreed with this conclusion.

The defense next presented numerous friends of Mrs. Walker, who allegedly witnessed various instances of Mr. Walker's physical abuse and verbal insults about her weight problem. Mrs. Walker described at trial the abuse inflicted by Mr. Walker. For the most part this occurred in private. She described occasions when Mr. Walker would unexpectedly turn quickly and strike her. Because of these experiences, Mrs. Walker related that on April 15, her husband's "angry" presence in the kitchen, caused her to be "scared" and "in fear of [her] life" when he asked for his truck key and turned his back. Therefore, she grabbed a knife and stabbed him because she "knew the truck key wasn't on the key ring and . . . knew he was going to turn around and hit her and he wasn't going to do it again."

■ The trial court gave the jury a series of instructions on the law of self–defense to which Mrs. Walker assigns error. She first asserts that the trial court erred in failing specifically to instruct the jury that the State had the burden of proving the absence of self–defense beyond a reasonable doubt.[2] When self–defense is properly raised in an assault prosecution, the State bears the burden of proving the absence of self–defense beyond a reasonable doubt, *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984), and

---

[2]Mrs. Walker has failed to identify by number or set out verbatim anywhere in her brief the challenged instruction as required by RAP 10.3(g) and RAP 10.4(c); however, because this claimed instructional error raises a constitutional question, we will address the merits of her contention. *Thomas v. French,* 99 Wn.2d 95, 101, 659 P.2d 1097 (1983).

the trial court must clearly and unambiguously instruct the jury that the State has the burden of disproving self–defense. *Acosta,* 101 Wn.2d at 621. However, to be entitled to such an instruction allocating the burden of proof to the State, the defendant bears the initial burden of producing some credible evidence tending to show the assault was in self–defense. *State v. Acosta, supra; State v. McCullum,* 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). The sufficiency of the evidence to raise a claim of self–defense is a question of law for the trial court, viewing the evidence from the defendant's perspective. *State v. McCullum, supra.*

Although the trial court submitted the theory of self–defense to the jury, we conclude that, even applying a subjective standard, the evidence here falls woefully short of establishing an issue of justifiable self–defense. The use of force against another is lawful "[w]henever used by a party about to be injured, . . . in preventing or attempting to prevent an offense against his person, . . . [and] the force is not more than is necessary . . ." RCW 9A.16.020(3). Self–defense is circumscribed under Washington law. The right to use deadly force in self–defense is founded upon the existence of a necessity. *State v. Wilson,* 26 Wn.2d 468, 480, 174 P.2d 553 (1946). The evidence must establish a confrontation or conflict, not instigated or provoked by the defendant, which would induce a reasonable person, considering all the facts and circumstances known to the defendant, to believe that there was *imminent danger* of great bodily harm about to be inflicted. *See State v. Griffith,* 91 Wn.2d 572, 589 P.2d 799 (1979); *State v. Currie,* 74 Wn.2d 197, 443 P.2d 808 (1968); *State v. Wilson, supra; State v. Churchill,* 52 Wash. 210, 100 P. 309 (1909).

To demonstrate the requisite immediacy of danger to raise the issue of self–defense, there need not be evidence of an actual physical assault. *State v. McCullum, supra; State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977). However, our courts have long adhered to the rule that there must be evidence of the appearance of danger prior to the use of force. *See State v. Griffith, supra; State*

*v. Currie, supra; State v. Miller,* 141 Wash. 104, 105, 250 P. 645 (1926); *State v. Churchill, supra.*

While the defendant's testimony may be sufficient in certain circumstances to warrant the giving of a self–defense instruction (*State v. McCullum, supra*), the defendant's testimony of fear alone, without more, is not sufficient to establish the appearance of imminent danger necessary to justify the instruction. Some evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force is required to show that the defendant had reasonable grounds to believe there was imminent danger of great bodily harm. *See, e.g., State v. Allery,* 101 Wn.2d 591, 682 P.2d 312 (1984) (self–defense claim raised where evidence revealed defendant's husband threatened to kill her before she fired the shot that killed her husband); *State v. McCullum, supra* (sufficient evidence of self–defense where defendant testified the victim made a movement to produce a gun); *State v. Griffith, supra* (evidence insufficient to support a jury instruction on self–defense in the absence of evidence indicating that the victim was engaged in any aggressive or threatening behavior); *State v. Wanrow, supra* (evidence showed that before the shooting the decedent refused to leave defendant's friend's residence despite numerous requests to do so).

In the present case, there was no evidence whatsoever in the record that Mr. Walker engaged in any aggressive or threatening behavior toward Mrs. Walker. The aggressive actions of Mrs. Walker, in fact, set in motion the chain of events culminating in the stabbing. Mrs. Walker's actions were intended to provoke and did invite a confrontation with her husband. She testified that she knew moving her husband's truck would make him "mad because his truck [was] probably the most important thing to him in his life." Mrs. Walker then called her husband's girl friend twice, making abusive comments "to make sure that Deane . . . knew [she] had moved the truck . . . and [that] she still had his truck key." Mrs. Walker conceded she made

threatening comments to Ms. Loomis, inviting Ms. Loomis to "meet [her] in the parking lot and fight . . . [and] because [she] wanted [her husband] back."

When Mr. Walker went to retrieve his truck key the apartment door was "wide open." Mrs. Walker did not respond when he asked for his key. Observing a key ring across the kitchen, Mr. Walker went to examine it. At least 8 feet separated them when Mrs. Walker grabbed the butcher knife and stabbed him in the back. Mr. Walker was unarmed and made no threatening or aggressive comments or gestures toward Mrs. Walker on this occasion. Mrs. Walker's own description of the confrontation did not supply a sense of imminent peril. She did not contend that she believed her husband was armed with a deadly weapon, that he made any movements toward her, or that he engaged in any threatening or aggressive behavior, either verbally or physically. Indeed, she testified he merely asked for his key before she stabbed him. Even assuming that Mr. Walker appeared "angry" to the defendant, which caused her fear, self–defense would not be available since she clearly precipitated the situation. *See, e.g., State v. Craig,* 82 Wn.2d 777, 514 P.2d 151 (1973); *State v. Currie, supra; State v. Jelle,* 21 Wn. App. 872, 587 P.2d 595 (1978). As the Supreme Court in *Currie* noted, "An accused person who is an aggressor in an affray, or by acts or words provokes or brings on an affray, cannot invoke the doctrine of self–defense . . ." *Currie,* 74 Wn.2d at 199.

Mrs. Walker's ultimate defense rested solely on the bare assertion that she feared for her life because of abuse she allegedly sustained in the past. Mrs. Walker attempts to establish the concept that one who is a victim of family abuse is justified in inflicting deadly force on the abuser even where a confrontation is brought about at the instigation of the abused. We do not read *State v. Allery, supra,* which recognized the existence of the "battered woman syndrome," as establishing that this syndrome is a defense in and of itself. The function of evidence of the battered woman syndrome, offered through expert testimony, is

merely to assist the trier of fact in evaluating the reasonableness of both the use of force and the degree of force used in a case involving the recognized circumstances of self–defense. That the defendant is a victim of a battering relationship is not alone sufficient evidence to submit the issue of self–defense to a jury. It is the perceived imminence of danger, based on the appearance of some threatening behavior or communication, which supplies the justification to use deadly force under a claim of self–defense. The record before us shows no credible evidence entitling Mrs. Walker to any instruction on self–defense.

Because we conclude that Mrs. Walker was not entitled to submit the issue of self–defense to the jury, any error by the trial court in failing to specifically instruct the jury that the State bears the burden to disprove self–defense, in failing to properly define self–defense or in failing to give an instruction on no duty to retreat was necessarily harmless beyond a reasonable doubt. *Cf. State v. Biondic,* 47 Wn.2d 593, 288 P.2d 845 (1955) (no prejudicial error where the trial court failed to instruct the jury to convict under the lowest degree of murder if a reasonable doubt exists as to which degree defendant is guilty, because the trial court should not have submitted the theory of second degree murder to the jury).[3]

We affirm the conviction.

WORSWICK, C.J., and REED, J., concur.

Reconsideration denied June 21, 1985.

Review denied by Supreme Court September 6, 1985.

---

[3]Further, the trial court's instructions, taken as a whole, correctly defined self–defense (*State v. Painter,* 27 Wn. App. 708, 620 P.2d 1001 (1980)), and the trial court properly refused Mrs. Walker's proposed instruction that she had no duty to retreat, there being no evidence that she was "feloniously assaulted." *See Allery,* 101 Wn.2d at 598.