[Nos. 22045–4–I; 23592–3–I.   Division One.   February 26, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ORA OTIS
KIDD, *Appellant.*

*Lenell Nussbaum* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Kathryn Goater, Deputy*, for respondent.

WINSOR, J.—Ora Otis Kidd appeals a judgment and exceptional sentence for three counts of second degree assault. We affirm.

Kidd shot and seriously injured two fellow bus passengers, J. and K., on November 13, 1987. The bus came to a halt; Kidd got off and walked away.

Undercover police officers in the area quickly arrived at the scene. Using an unmarked car, the officers searched for Kidd and located him on a nearby street. After an exchange of gunfire during which Kidd fired one shot, Kidd surrendered and was arrested. It is unclear whether Kidd, or one of the officers, fired the first shot.

Kidd was charged with two counts of attempted first degree murder for the J. and K. shootings, and one count of second degree assault for firing at the police officers. He was found competent to stand trial, and his jury trial timely commenced on February 5, 1988.[1]

At trial, Kidd admitted committing the charged acts, but claimed that he acted in self–defense. Kidd explained that at the time of the shootings he thought drug dealers and gang members intended to kill him because they wrongly believed him to be a police informant. Other defense witnesses corroborated Kidd's testimony that in the weeks preceding the bus incident Kidd believed his life was in danger.

Concerning the bus shootings, Kidd testified that during the bus ride, other passengers changed seats in a manner

---

[1] In a pro se supplemental brief Kidd argues that his CrR 3.3 speedy trial rights were violated. We find no merit in his argument, which ignores the plain language of CrR 3.3(g)(1).

that corresponded to his own seat changes. Kidd found this suspicious and threatening, and became fearful that these riders intended him harm. He was particularly concerned about J. and K., whom he believed to be drug dealers. Kidd explained that he shot J. because J. put his hand in his coat, an act Kidd believed indicated J. was drawing a gun. Kidd then "turned and just automatically shot" K., who sat across from J., and who "jumped" when J. was shot.

Kidd offered a similar explanation for firing at the undercover police officers. He testified that when the plain-clothes officers jumped out of an unmarked car, he believed that they, too, were drug dealers against whom he had to protect himself. Kidd fired without knowing that his intended victims were police officers.

The trial court instructed the jury on the charged offenses, as well as on first and second degree assault as lesser included offenses of the J. and K. attempted murder counts. The court gave a self–defense instruction, and, over Kidd's objection, an "aggressor instruction".[2] The court refused to give the jury an instruction based on WPIC 17.04, which states that it is lawful to act in self–defense when one reasonably, but mistakenly, believes himself to be in danger.[3]

The jury found Kidd guilty of three counts of second degree assault, and entered deadly weapon verdicts on all three counts. The trial court determined that the standard range term for each of Kidd's convictions was 27 to 32

---

[2]The aggressor instruction provided:

"No person may by any intentional act reasonably likely to provoke a belliger-ent response create a necessity for acting in self–defense and thereupon kill, use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self–defense is not available as a defense."

[3]The rejected instruction provided:

"If a person acting as a reasonably prudent person mistakenly believes himself to be in danger of injury or of an offense being committed against him, he has the right to defend himself by the use of lawful force against that apparent injury or offense even if he is not actually in such danger."

months, and imposed three concurrent, 93–month exceptional sentences.

## INSTRUCTIONAL ISSUES

Kidd first contends that the trial court committed reversible error when it refused to give the jury his proposed instruction that one may lawfully act in self–defense upon a reasonable, but mistaken, belief that he or she is in danger. *See* WPIC 17.04. We find no merit in this contention.

██ ██ It is reversible error to refuse to give a requested instruction when its absence prevents the defendant from presenting his or her theory of the case. *E.g., State v. Dana,* 73 Wn.2d 533, 537, 439 P.2d 403 (1968). It is not error, however, to reject a requested instruction when its subject matter is adequately covered in other instructions. *State v. Etheridge,* 74 Wn.2d 102, 110, 443 P.2d 536 (1968). Thus, in a self–defense case, it is not reversible error to refuse a WPIC 17.04 mistaken belief instruction, when under the self–defense instruction given, counsel is free to argue that the defendant's "reasonable belief that he was in danger could properly be a mistaken belief." *State v. Bius,* 23 Wn. App. 807, 810, 599 P.2d 16 (1979). This criterion is met here, particularly since the self–defense instruction given states that in order for the defendant to have acted lawfully, he must have *reasonably believed* that he was in danger.[4] *See generally* 2 P. Robinson, *Criminal Law Defenses* § 121(c) (1984) (the phrase reasonably believed permits a defendant to be exculpated for conduct he or she believes is justified, but which in fact is not justified).

---

[4]The jury was instructed:

"It is a defense to a charge of attempted murder in the first degree, assault in the first degree and assault in the second degree that the force used was lawful as defined in this instruction.

"The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured by someone and when the force is not more than is necessary.

"The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.

Kidd also contends that the trial court committed reversible error by giving the jury an aggressor instruction in conjunction with each of the three charged crimes. We disagree.

■ Aggressor instructions are not favored. *State v. Wasson,* 54 Wn. App. 156, 161, 772 P.2d 1039, *review denied,* 113 Wn.2d 1014 (1989); *State v. Arthur,* 42 Wn. App. 120, 125 n.1, 708 P.2d 1230 (1985). Nevertheless, it is not error to give one when there was credible evidence from which the jury could reasonably have concluded that it was the defendant who provoked the need to act in self-defense. *State v. Hughes,* 106 Wn.2d 176, 192, 721 P.2d 902 (1986); *State v. Heath,* 35 Wn. App. 269, 271–72, 666 P.2d 922, *review denied,* 100 Wn.2d 1031 (1983). The provoking act must be intentional. *Arthur,* 42 Wn. App. at 124. It cannot, however, be the actual assault. *Wasson,* 54 Wn. App. at 159; *State v. Brower,* 43 Wn. App. 893, 902, 721 P.2d 12 (1986). Nor can it be an act directed toward one other than the actual victim, unless the act was likely to provoke a belligerent response from the actual victim. *Wasson,* 54 Wn. App. at 159–61 (interpreting *State v. Thomas,* 63 Wn.2d 59, 385 P.2d 532 (1963)).

We find no error in giving the aggressor instruction in conjunction with count 3, the assault–on–police–officers count. A jury could reasonably and properly have found Kidd's armed assaults and flight from the bus shooting scene to be the requisite provoking act. Citizens can scarcely be surprised that police come after them, prepared to use weapons, in such circumstances. In any event, if it was error to give the aggressor instruction, the error was harmless beyond a reasonable doubt. The self–defense instruction given in this case included language essentially

---

"The evidence must establish a confrontation or conflict, or appearance of danger, not instigated or provoked by the defendant, which would induce a reasonable person considering all the facts and circumstances known to the defendant, to believe that there was imminent danger of bodily harm about to be inflicted.

"The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful."

the same as the aggressor instruction. See footnote 4. Kidd did not object to this instruction at trial, nor does he specifically challenge it on appeal. RAP 10.3(g).

We find no reversible error in giving the aggressor instruction in conjunction with counts 1 and 2, the bus–shooting counts. We agree with Kidd that no evidence indicates that he somehow provoked J. and K. into creating a need for him to act in self–defense; therefore, it was error to give the instruction for these counts. *See State v. Upton,* 16 Wn. App. 195, 204, 556 P.2d 239 (1976) (error to give instruction absent evidence that the defendant created necessity to act in self–defense). The error was harmless, however, since we are persuaded beyond a reasonable doubt that no reasonable jury could have found that the bus shootings were acts of lawful self–defense. In such circumstances, error related to self–defense instructions is harmless.[5] *Cf. State v. Walker,* 40 Wn. App. 658, 665, 700 P.2d 1168, *review denied,* 104 Wn.2d 1012 (1985).

The right to kill in self–defense is founded upon the existence of a real or apparent necessity. *State v. Wilson,* 26 Wn.2d 468, 480, 174 P.2d 553 (1946). The defendant must have acted on an honest and reasonable belief that he or she was in imminent danger of great personal injury. RCW 9A.16.050(1); *see State v. Negrin,* 37 Wn. App. 516, 521, 681 P.2d 1287, *review denied,* 102 Wn.2d 1002 (1984). The defendant's conduct "is to be judged by the condition appearing to [him or her] at the time, not by the condition as it might appear to the jury in the light of testimony before it." *State v. Miller,* 141 Wash. 104, 105, 250 P. 645 (1926). Criminal culpability is not lessened when one acts

---

[5]Error which affects a defendant's self–defense claim is constitutional in nature and thus cannot be deemed harmless unless it is harmless beyond a reasonable doubt. *State v. McCullum,* 98 Wn.2d 484, 497, 656 P.2d 1064 (1983). An instructional error meets this standard when the reviewing court determines beyond a reasonable doubt that the error had no effect on the final outcome of the case. *State v. Stephens,* 93 Wn.2d 186, 190, 607 P.2d 304 (1980); *State v. Holt,* 56 Wn. App. 99, 105, 783 P.2d 87 (1989). This determination must derive from an examination of the record, from which it affirmatively appears that the error is harmless. *Stephens,* 93 Wn.2d at 191.

in self–defense due to an honest but unreasonable belief in the need for force. *Hughes,* 106 Wn.2d at 188–91.

Here, the record establishes beyond a reasonable doubt that Kidd's acts and fears were not reasonable. Kidd's perception of events was skewed by an unwarranted belief that drug dealers, gang members, and even police officers, intended to harm him. He grossly overreacted to acts and events which would not have caused alarm in a reasonable person. His acts on the bus were therefore not justified by self–defense.

Indeed, Kidd was not entitled to a self–defense instruction on these two counts. In *State v. Walker, supra,* the court held that fear alone does not entitle a defendant to a self–defense instruction. There must also be "[s]ome evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force . . . to show that the defendant had reasonable grounds to believe there was imminent danger of great bodily harm." *Walker,* 40 Wn. App. at 663. Here there is no evidence that either victim of the bus shootings acted in an "aggressive or threatening" manner before Kidd shot them.[6]

### Sentencing Issues

Kidd next contends that the trial court erred in imposing a 93–month exceptional sentence. While we reject two of the trial court's reasons, we affirm Kidd's sentence.

The trial court gave eight reasons supporting Kidd's exceptional sentence: (1) there were multiple victims and the multiple offender policy results in too lenient a sentence; (2) count 3 involved an assault on police officers; (3) counts 1 and 2 involved victims particularly vulnerable due to their enclosure on a bus; (4) innocent passengers on the bus were unable to protect themselves; (5) the bus was moving, further endangering everyone present; (6) innocent

---

[6]Kidd contends that J. committed a threatening act when he put his hand in his coat, an act Kidd interpreted as drawing a gun. We find it unreasonable that, absent any prior history or preliminary confrontation between the defendant and the victim, the simple act of putting one's hand in a coat is a threatening or aggressive act.

members of the public were put in extreme fear and apprehension; (7) the bus assaults were acts of deliberate and extreme cruelty; and (8) the bus assault victims suffered injuries far more serious than those typically suffered by assault victims.

Kidd challenges all but two of these reasons. We find no merit in most of his contentions and choose to discuss only his arguments pertaining to reasons 1, 2, 7, and 8. Each of these arguments concerns whether the challenged reason can be used to justify an exceptional sentence. We therefore independently review each reason to determine whether, as a matter of law, it can be so used. *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986).

Reason 1 states that Kidd "committed crimes against multiple victims and the multiple offender policy results in a too lenient presumptive sentence." Although this reason is based on statutory aggravating factors, RCW 9.94A.390-(2)(c)(i), (2) (f), those factors are improperly applied to this case.

■ Under the SRA, the presence of multiple victims supports an exceptional sentence only when "'the conduct forming the basis of the charge creates multiple victims,' and the State has not filed multiple charges." *State v. Pittman*, 54 Wn. App. 58, 63, 772 P.2d 516 (1989) (quoting *State v. Davis*, 53 Wn. App. 306, 313, 766 P.2d 1120, *review denied*, 112 Wn.2d 1015 (1989)). Because the State filed charges relating to each victim of Kidd's bus shootings, this aggravating factor is inapplicable to both count 1 and count 2. *State v. Pittman, supra.*

The State argues, however, that the multiple victim factor does apply to count 3, which involved Kidd's assault upon the two undercover police officers and an eyewitness who accompanied them. This argument fails, as it overlooks the SRA's definition of victim as "any person who has sustained physical or financial injury to person or property as a direct result of the crime charged." RCW 9.94A.030(31); *see Davis*, 53 Wn. App. at 310. Here, there is no evidence that either officer or the eyewitness suffered physical or financial injury resulting from Kidd's assault. The multiple

victim rationale is therefore inapplicable to count 3, as well as counts 1 and 2.

Nor is this a case in which it is appropriate to rely on the aggravating factor that the multiple offender policy of RCW 9.94A.400 results in too lenient a presumptive sentence. RCW 9.94A.390(2)(f).

> It is proper to rely on this aggravating factor when there is some extraordinarily serious harm or culpability resulting from multiple offenses which would not otherwise be accounted for in determining the presumptive sentencing range.

*State v. Fisher,* 108 Wn.2d 419, 428, 739 P.2d 683 (1987). Here, the State does not argue that Kidd's acts had particularly egregious effects, and there is no such evidence in the record. Reason 1 is invalid.

Reason 2 states that "Count III involved shooting at police officers acting in the course of their public duty." The State argues that this finding should be upheld for public policy reasons. This argument is unpersuasive where, as here, the defendant is unaware his or her victims are police officers.

The Legislature statutorily provides enhanced penalties for acts against police officers in those situations it deems appropriate. Significantly, these statutes include an element of knowledge that the victim was an officer acting in the course of official duty. *E.g.,* RCW 10.95.020(1) (aggravated first degree murder when defendant knew or should have known that the victim was a law enforcement officer performing official duties); RCW 9A.76.030 (misdemeanor to refuse to summon aid upon request of person known to be a peace officer). Here, Kidd did not know that his pursuers, who were in an unmarked car and were not in uniform, were police officers. Absent this knowledge, we refuse to accept the victims' police officer status as a basis for imposing an exceptional sentence. Reason 2 is therefore invalid.

Kidd also challenges reasons 7 and 8, which state:

> The assault on victims of Counts I and II were acts of deliberate and extreme cruelty, where the victims were shot at close range in the face and chest with one victim actually being

shot twice. These assaults were completely unpr[o]voked and the victims were unarmed.

 The extent of the injuries suffered by the victims of Counts I and II, including their emotional trauma, were far more serious than those typically suffered by assault victims, thus exceeding those assaults contemplated by the legislature in setting a presumptive sentencing range for persons convicted of assault in the second degree.

Kidd contends that these reasons violate the real facts doctrine, codified at RCW 9.94A.370(2). He does not, however, suggest what additional, uncharged crimes these reasons establish. No such crime is apparent. Kidd's contention is therefore without merit. Nevertheless, we discuss reason 7 because it is based on inappropriate reasoning.

 Reason 7 states that Kidd acted with deliberate and extreme cruelty. Deliberate and extreme cruelty means "gratuitous violence, or other conduct which inflicts physical, psychological or emotional pain as an end in itself". *State v. Strauss,* 54 Wn. App. 408, 418, 773 P.2d 898 (1989). Due to the deliberate and gratuitous nature of Kidd's acts,[7] we hold that this aggravating factor is present here. In so holding, however, we call attention to errors in the trial court's reasoning.

First, the fact that the attacks "were completely unpr[o]-voked and the victims were unarmed" describes many, if not most assaults. This aspect of the attacks thus cannot be used to support a finding of deliberate and extreme cruelty.

 Second, this is not a case in which the infliction of multiple injuries constitutes deliberate and extreme cruelty. We recognize that multiple shots or stabbings causing multiple injuries can, in some circumstances, establish this aggravating factor. In *State v. Dunaway,* 109 Wn.2d 207, 219, 743 P.2d 1237, 749 P.2d 160 (1987), for example, the court found deliberate and extreme cruelty where the

---

[7]Both bus shooting victims testified at trial. Their testimony established the deliberate nature of Kidd's acts. J. testified that he had been reading his Bible. Kidd asked him how he was doing, to which J. replied that he was "doing okay." Kidd said "It is your time" and shot him in the head. K. testified that after Kidd shot J., Kidd turned toward him, said, "You, too," and fired two shots at point-blank range.

defendant "shot the victim, partially left the room, and returned to shoot him again". In *State v. Harmon,* 50 Wn. App. 755, 761, 750 P.2d 664, *review denied,* 110 Wn.2d 1033 (1988), the court concluded that inflicting 64 stab wounds is "a violent, vicious act of deliberate cruelty." These cases are distinguishable, however, as they involve an element of gratuitous infliction of multiple injuries that is not present here. Shooting a person two times in rapid succession simply does not evidence the same abhorrent behavior as that at issue in *Dunaway* and *Harmon.*

Third, the fact that Kidd shot his victims at point–blank range is more appropriately considered as support for reason 8, which states an unusually severe injury rationale, than for a finding of deliberate cruelty. It is likely that the injuries and trauma suffered by a point–blank pistol shot will be "significantly more serious than in the usual [second degree assault] case." *State v. Tunell,* 51 Wn. App. 274, 279, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988).

The judgment is affirmed. Although we invalidate two of the eight reasons given in support of Kidd's exceptional sentence, we also affirm the sentence imposed. From the record, we are confident that the trial judge would impose the same sentence based upon the remaining, proper reasons. *State v. Crutchfield,* 53 Wn. App. 916, 931 n.7, 771 P.2d 746 (1989); *Tunell,* 51 Wn. App. at 284.

SWANSON and SCHOLFIELD, JJ., concur.

Reconsideration denied April 30, 1990.

Review denied at 115 Wn.2d 1010 (1990).