# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54587-0-II |
| Respondent, | |
| v. | |
| JOHNNY LEE GULLOTTO JR., | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Johnny L. Gullotto Jr. appeals his conviction and sentence for assault in the second degree. Gullotto argues that the trial court violated his constitutional right to present a defense by excluding evidence relevant to his defense of another theory. Gullotto also argues that the trial court erred by declining to instruct the jury on defense of another and self-defense. Gullotto further contends that the trial court erred by imposing community custody supervision fees.

We hold that the trial court's evidentiary ruling, which excluded testimony of the victim's prior bad acts, did not violate Gullotto's right to present a defense. Gullotto's testimony regarding the victim's prior bad acts was irrelevant; therefore, the trial court did not abuse its discretion by excluding that irrelevant evidence. And because defendants have no constitutional right to present irrelevant evidence, the trial court did not violate Gullotto's right to present a defense by excluding evidence of the victim's prior bad acts. We also hold that the trial court did not err by declining to instruct the jury on defense of another or self-defense because there was insufficient evidence to warrant those instructions. Furthermore, the record shows that the trial court intended to waive

all discretionary legal financial obligations (LFOs), yet still imposed the community custody supervision fees. Accordingly, we affirm Gullotto's conviction for assault in the second degree and remand to the trial court to reconsider the community custody supervision fee provision in the judgment and sentence.

## FACTS

I. THE INCIDENT LEADING TO GULLOTTO'S ASSAULT CHARGE

On December 16, 2019, Michael Mikesell visited the mother of his children, Katherine Smith, in a tent city. This tent city is a community of unhoused persons located behind city hall in Aberdeen, Washington. At the time, Mikesell and Smith were not a couple.

Mikesell and Smith met up to have lunch together at St. Mary's Church, which is located two and half blocks from the tent city. The meeting was cordial at first, but then the two began to argue. Gullotto witnessed the interaction and walked behind them on the way to lunch.

At lunch, Mikesell and Smith sat at a table with Scotty Olsen, who was Smith's boyfriend at the time. Mikesell and Smith began to argue about their children and the issues that they were having with child protective services.

Gullotto sat at the table next to Mikesell and Smith. Gullotto overheard Mikesell berate Smith over the course of the meal, calling her a "bitch," a "drug addict," and that she was "useless and irresponsible." Report of Proceedings (RP) at 146. Gullotto "sat back and listened for a little bit until . . . [he got] tired of hearing [Mikesell] degrade . . . [Smith]." RP at 146. Gullotto then "told [Mikesell] that he needed to get up and leave or there was going to be a bigger issue." RP at 146. Mikesell told Gullotto that "[he] needed to mind [his] own business or [else he would be] losing more than just [his] finger." RP at 146. Mikesell got up and left.

2

Mikesell went back to the tent city to get some food that he left in Smith's tent. The residents at the tent city watched Mikesell go into Smith's tent and accused him of stealing. Mikesell wanted to clear up the situation, so he went back to the church to let Smith know that he grabbed his food out of her tent.

Mikesell arrived at the church and saw Smith and Olson at the top of the stairs. Mikesell walked up the stairs and told Smith about the incident back at the tent city. Smith got upset and began yelling at Mikesell.

Gullotto walked up the stairs towards Mikesell and Smith. Mikesell claimed to maintain a civil tone, whereas Smith got "really loud." RP at 90. Mikesell's back was turned towards Gullotto as he walked up the stairs. The next thing he knew, Gullotto punched him in the face and he fell down the stairs.

Gullotto presented his version of the events. Gullotto stated that he saw "[Smith] and [Mikesell] at the top of the steps yelling at each other" and that they were "nose-to-nose in each other's face." RP at 148. As Gullotto walked up the steps, he yelled at Mikesell asking what he had taken out of Smith's tent. RP 148. Gullotto stated that "[Mikesell] looked at [him] and said, fuck off or die." RP at 148. Gullotto noted that Mikesell was "[w]ithin arm's reach" of him, but that they were side-by-side with each other when he said "fuck off or die." RP at 149. Gullotto believed that the statement was a threat to his life and punched Mikesell.

Leland Wilson, an electrical contractor, was working across the street when the incident occurred. Wilson noticed "a loud altercation going on at the top of the [church] steps. There was a gentleman and a lady who were shouting at each other [and] were standing toe-to-toe." RP at 71. Wilson stated that "there was a lot of profanity and [that] it was getting kind of ugly." RP at 71. Although Mikesell and Smith were standing toe-to-toe, Wilson stated that "[Mikesell's] arms

3

were down to his side" and that "it didn't look like he was being aggressive." RP at 72. Wilson stated that "[Smith] was very animated" and "scream[ed] most of the profanities." RP at 72.

Wilson witnessed Gullotto walk up the stairs and throw a "haymaker" to the side of Mikesell's head. RP at 73. Wilson stated that Mikesell "didn't even see the man who struck him. The man that struck him walked up behind him and just cold cocked him." RP at 75. Because of the punch, Mikesell "fell down the stairs and landed at the bottom." RP at 73.

Gullotto is a substantially larger man than Mikesell. Mikesell did not have any weapons on his person during the incident. And Mikesell did not make any offensive gestures towards Smith or Gullotto during the incident.

Ron Bradbury, a police officer for the City of Aberdeen, responded to the incident. Bradbury took a statement from Gullotto. Bradbury stated that Gullotto did not indicate that "Mikesell had made any threats right before he hit him" or that "there was an imminent threat to somebody else's safety before he hit [] Mikesell." RP at 125.

Mikesell suffered a broken elbow and a broken femur as a result of the fall. He spent seven days in the hospital and had to walk with a cane thereafter.

On December 20, 2019, the State charged Gullotto with assault in the second degree.[1] Gullotto pleaded not guilty and the case proceeded to a jury trial.

---

[1] RCW 9A.36.021(1)(a) provides that, "[a] person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm."

II.    TRIAL COURT'S EVIDENTIARY RULING AND JURY INSTRUCTIONS

At trial, Gullotto attempted to advance a theory of self-defense and defense of another. With respect to defense of another, Gullotto testified that he has known Smith since she was pregnant with her last child. On the day Gullotto met Smith, he testified that Mikesell was "pushing [Smith] around," and that other people present made Mikesell leave. RP at 143-44.

Defense counsel attempted to elicit further testimony about Mikesell's prior bad acts. Specifically, defense counsel asked Gullotto, "Had you—were there other times when you saw [Mikesell] being violent towards [Smith]?" RP at 144. The State objected based on relevancy grounds. The trial court sustained the objection. Defense counsel requested a side bar, but the court denied the request "on that issue." RP at 144.

Shortly thereafter, Gullotto attempted to again testify about prior instances where Mikesell allegedly pushed Smith. The State objected and the trial court sustained the objection. The trial court instructed defense counsel to stop Gullotto from "testifying about matters to which [it] already sustained an objection," referring to prior bad acts testimony. RP at 149.

After the close of evidence, defense counsel requested instructions on lawful use of force, specifically, self-defense and defense of another. The following exchange ensued:

> THE COURT: . . . All right. [Defense Counsel], please come to the podium.
> Do you believe there's sufficient evidence in the record to support any self-defense instructions?
> [Defense Counsel]: I do, Your Honor.
> THE COURT: What evidence has been presented?
> [Defense Counsel]: Mr. Gullotto's testimony that he approached Mr. Mikesell, basically said what did you steal from her tent. Mr. Mikesell said, fuck off or die, and believing that that was a prelude to an assault, he swung first.
> THE COURT: Is that it?
> [Defense Counsel]: Yes.
> THE COURT: Is that the total sum of the evidence that you believe supports self-defense?

[Defense Counsel]: And defense of others, Your Honor, given that he had been trying to stop Mr. Mikesell from being aggressive towards Ms. Smith.

THE COURT: But—but your client's testimony was that he was verbally abusive to her.

[Defense Counsel]: Right.

THE COURT: Do you think that supports an assault upon Mr. Mikesell?

[Defense Counsel]: No, I don't.

THE COURT: Okay. Then what other evidence is there? How was he defending another person if the only thing that was going on was a bunch of verbal chipping back and forth?

[Defense Counsel]: Your Honor, I asked him what basis he had for thinking that Mr. Mikesell might be preparing to assault Ms. Smith and I think you sustained an objection to that question.

THE COURT: Okay.

[Defense Counsel]: But I think it was his perception that there was about to be an assault and I think that is enough. And that is the evidence that I have.

THE COURT: So if I—if I give self-defense instructions in this case based upon the evidence you just cited, am I not in fact ruling that the law in the State of Washington is that—if someone says fuck off or die, that that makes it okay to assault that person?

[Defense Counsel]: I don't think—I think that oversimplifies it, Your Honor.

THE COURT: Well, what else is there?

[Defense Counsel]: I think it would—it would make it reasonable to think that there is an assault against him intended and for him to react to that assault.

THE COURT: Intended when?

[Defense Counsel]: Immediately. If some—someone—if you're having an aggressive interaction with someone and he says fuck off or die, that to me would imply intention of doing something if—if Mr. Gullotto doesn't walk away.

THE COURT: Where was Mr. Gullotto standing when he says he heard that statement?

[Defense Counsel]: He said he was standing within arm's reach of Mr. Mikesell.

THE COURT: And that—and that Mr. Mikesell was standing at a 45-degree angle facing away from him, that's what he said.

[Defense Counsel]: If that's the way you heard it. I thought he was trying to say he was at a 45-degree more towards him, but obviously you have to decide from the evidence. You heard the evidence as well as I did.

THE COURT: There was—there was no physical movement about which Mr. Gullotto testified that could have been construed as aggressive, right? Mr. Mikesell—Mr. Mikesell didn't raise his arms, he didn't clinch his fists, right?

[Defense Counsel]: Right.

6

THE COURT: He didn't—he didn't change his posture to get into a—a combative or fighting position, did he?

[Defense Counsel]: No.

THE COURT: All that happened was your client said something to Mr. Mikesell and Mr. Mikesell said fuck off or die, right?

[Defense Counsel]: Right.

THE COURT: And you believe that's a threat of imminent injury that would justify an assault?

[Defense Counsel]: It could be, Your Honor.

RP at 160-64.

The trial court went on to state that it did not believe there was "any reasonable basis upon which [Gullotto] could have felt threatened under [the] circumstances." RP at 164. Accordingly, the trial court denied Gullotto's request to instruct the jury on self-defense and defense of another.

III.    JUDGMENT AND SENTENCE

The jury found Gullotto guilty of assault in the second degree. The trial court imposed a standard range sentence of 12 months. The trial court also imposed 12 months of community custody.

At sentencing, the trial court ordered that only mandatory LFOs would be imposed and that discretionary LFOs were waived:

[The State]: Waive all legal financial obligations, Your Honor?
[The Court]: No. Mandatory only. Wait. You asked me if I'm going waive them? Yes.
[The State]: Okay. Thank you.

RP at 204. However, the judgment and sentence ordered that Gullotto "pay supervision fees as determined by [the Department of Corrections (DOC)]," which is a discretionary fee. CP at 22; *State v. Spaulding*, 15 Wn. App. 2d 526, 536, 476 P.3d 205 (2020). Gullotto appeals.

ANALYSIS

I.   EVIDENCE OF MIKESELL'S PRIOR BAD ACTS

Gullotto argues that the trial court abused its discretion by excluding relevant testimony of Mikesell's history of assaultive behavior toward Smith and that the trial court's erroneous evidentiary ruling violated his constitutional right to present a defense. We disagree.

A.   Standard of Review

Criminal defendants have a constitutional right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, §§ 3, 22; *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). However, "[t]his right is not absolute." *State v. Arredondo*, 188 Wn.2d 244, 266, 394 P.3d 348 (2017). The defendant's right to present a defense is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers*, 410 U.S. at 302; *State v. Cayetano-Jaimes*, 190 Wn. App. 286, 296, 359 P.3d 919 (2015).

When reviewing trial court discretionary rulings that potentially implicate constitutional rights, we engage in a "two-step review process." *See State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019) (concerning discretionary evidentiary rulings); *see also State v. Clark*, 187 Wn.2d 641, 648-56, 389 P.3d 462 (2017). First, appellate courts should examine whether a trial court's evidentiary decision was an abuse of discretion. *State v. Jennings*, No. 99337-8, slip op. at 4 (Wash. Feb. 3, 2022), https://www.courts.wa.gov/opinions/pdf/993378.pdf.[2] A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *State v.*

---

[2] Gullotto appears to argue that the standard of review for the evidentiary issue is de novo because the interpretation of an evidentiary rule is a question of law. But Gullotto does not present argument as to what rule of evidence the trial court even interpreted. At any rate, the issue here is whether the trial court erred by excluding certain evidence, which is reviewed for an abuse of discretion. *Clark*, 187 Wn.2d at 648.

*Salgado-Mendoza*, 189 Wn.2d 420, 427, 403 P.3d 45 (2017).  If the trial court abused its discretion and such error prejudiced the defendant, the inquiry ends.  *Jennings*, No. 99337-8, slip op. at 5.  If however, the decision constitutes harmless error, the appellate court next examines whether the trial court's decision violated a defendant's right to present a defense.  *Id*.

      B.      Legal Principles—Prior Bad Acts Evidence and Lawful Use of Force

Generally, "relevant evidence is admissible."  ER 402.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable."  ER 401.  The "threshold for relevance is extremely low."  *City of Kennewick v. Day*, 142 Wn.2d 1, 8, 11 P.3d 304 (2000).  Evidence of other crimes, wrongs, or acts while "not admissible to prove the character of a person in order to show action in conformity therewith" may be admissible for other purposes.  *See* ER 404(b).

In Washington, the use of force is lawful when "used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary."  RCW 9A.16.020(3).  "For the jury to be instructed on [lawful use of force], the defendant must produce some evidence regarding the statutory elements of that defense."  *State v. Tullar*, 9 Wn. App. 2d 151, 156, 442 P.3d 620 (2019).  "[A] trial court need not instruct the jury on self defense or defense of another if no reasonable person in the defendant's shoes could have perceived a threat of . . . [imminent] injury."  *State v. Marquez*, 131 Wn. App. 566, 577, 127 P.3d 786 (2006).

"[W]hen assessing a self-defense claim the trial court applies both a subjective and objective test."  *State v. Read*, 147 Wn.2d 238, 242-43, 53 P.3d 26 (2002).  For the subjective component, the court must "place itself in the defendant's shoes and view the defendant's acts in light of all the facts and circumstances the defendant knew when the act occurred."  *Id*. at 243.  For

the objective component, the court must "determine what a reasonable person would have done if placed in the defendant's situation." *Id*. "Some evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force is required to show that the defendant had reasonable grounds to believe there was imminent danger of [injury]." *State v. Walker*, 40 Wn. App. 658, 663, 700 P.2d 1168 (1985) (addressing self-defense).

Therefore, "evidence of a victim's violent actions may be admissible to show the defendant's state of mind at the time of the crime and to indicate whether he had reason to fear bodily harm." *State v. Burnham*, 4 Wn. App. 2d 368, 376, 421 P.3d 977 (2018). "Thus, a defendant 'may . . . show specific acts of the [victim] which are not too remote and of which [the defendant] had knowledge at the time of the [crime] with which he is charged.'" *Id*. at 377 (quoting *State v. Adamo*, 120 Wash. 268, 271, 207 P. 7 (1922)). "'Evidence of specific acts may be admissible for the limited purpose of showing whether the defendant had a reasonable apprehension of danger.'" *Burnam*, 4 Wn. App. 2d at 377 (quoting *State v. Fondren*, 41 Wn. App. 17, 25, 701 P.2d 810 (1985)).

C.     The Trial Court did Not Abuse its Discretion

Here, the trial court did not err by excluding Gullotto's testimony concerning Mikesell's prior bad acts towards Smith. Evidence of Mikesell's prior acts toward Smith would be relevant only if Gullotto could show that his subjective belief, that Mikesell was about to harm Smith, was objectively reasonable. But here, as demonstrated by defense counsel's offer of proof during colloquy with the trial court, Gullotto was unable to show any aggressive or threatening behavior, gesturing, or communication on Mikesell's part, which would establish that Gullotto had objectively reasonable grounds to believe that there was an imminent threat of injury towards Smith. *Walker*, 40 Wn. App. at 663.

10

Because there is no evidence to support the objective component for lawful use of force, Gullotto's testimony regarding Mikesell's prior bad acts towards Smith, facts bearing on Gullotto's subjective belief, would not be facts of consequence to the determination of the action—assault in the second degree. RCW 9A.36.021(1)(a); ER 401. Therefore, evidence of Mikesell's prior bad acts is irrelevant and inadmissible. ER 402. Accordingly, we hold that the trial court did not abuse its discretion by excluding testimony of Mikesell's prior bad acts.

D.        The Trial Court did Not Violate Gullotto's Right to Present a Defense

Next, under *Jennings*, we must examine whether the trial court's evidentiary decision violated Gullotto's right to present a defense. No. 99337-8, slip op. at 5. Relying on *State v. Duarte Vela*, 200 Wn. App. 306, 402 P.3d 281 (2017), Gullotto argues that the trial court's evidentiary ruling violated his constitutional right to present a defense. We disagree.

As discussed above, both the United States Constitution and the Washington Constitution guarantee the right to present testimony in one's defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers*, 410 U.S. at 294. "A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence." *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

However, "[t]his right is not absolute." *Arredondo*, 188 Wn.2d at 266. "'Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence.'" *Duarte Vela*, 200 Wn. App. at 317 (quoting *Jones*, 168 Wn.2d at 720). "In some cases, evidence is of such high probative value that 'no state interest [is] compelling enough to

preclude its introduction consistent with the Sixth Amendment and [Washington Constitution, article I, section 22].'" *Arndt*, 194 Wn.2d at 812.

In *Duarte Vela*, the State charged Duarte Vela with murdering Antonio Menchaca, and he claimed self-defense. 200 Wn. App. at 313. The State moved to exclude evidence of Menchaca's prior bad acts, while Duarte Vela claimed the acts were probative of his self-defense claim because they would establish the reasonableness of his belief of serious harm or death. *Id*. The prior bad acts alleged were Menchaca's threats to kill Duarte Vela's entire family, Menchaca's kidnapping of one of his sisters, and Menchaca's repeated battering of another of Duarte Vela's sisters. *Id*. at 313-16. The trial court excluded the proffered evidence based on remoteness in time and its belief that the evidence was weak or false. *Id*. at 315-16. The trial court further precluded Duarte Vela from testifying that that he feared Menchaca would cause him great bodily harm or death as Menchaca began drawing something from his pocket. *Id*. at 316. The jury rejected Duarte Vela's claim of self-defense and found him guilty of murder in the second degree. *Id*. at 310, 316.

On appeal, Division Three of this court held that the trial court violated Duarte Vela's constitutional right to present a defense when it excluded evidence of Menchaca's previous threat to kill his family. 200 Wn. App. at 326-27. The court reasoned that the threat was highly probative because the defendant knew about it. *Id*. at 319-20. The excluded testimony was necessary to establish the source and reasonableness of his subjective fear; an element of self-defense. *See id*. at 313, 320-21, 323-24. And without it, the defendant could not have fully testified to his version of events. *Id*. at 320. Accordingly, the court reversed Duarte Vela's conviction for murder in the second degree. *Id*. at 328.

Gullotto's reliance on *Duarte Vela* is misplaced because the defendant in that case made a prima facie showing of both subjective and objective fear of imminent injury to warrant a lawful use of force instruction. *See id*. at 312. As discussed above, the relevance of Mikesell's prior bad acts hinged on whether Gullotto's subjective belief, that Mikesell was about to injure Smith, was objectively reasonable. But unlike *Duarte Vela*, here, there is no evidence of any aggressive or threatening behavior, gesturing, or communication by Mikesell which would have shown that Gullotto had reasonable grounds to believe there was an imminent danger of injury toward Smith. *See Walker*, 40 Wn. App. at 663. Because Gullotto fails to establish the objective component for lawful use of force, testimony concerning Mikesell's prior bad acts is not relevant.

Accordingly, we hold that the trial court did not violate Gullotto's constitutional right to present a defense by excluding Gullotto's testimony concerning Mikesell's prior bad acts.

## II. DEFENSE OF ANOTHER JURY INSTRUCTION

Gullotto argues that the trial court's exclusion of "[the prior bad acts testimony] likely contributed to the court's improper refusal to instruct the jury on defense of another," which he contends, "violated [his] right to present a defense." Br. of Appellant at 14. We disagree that Gullotto was entitled to a defense of another instruction.

### A. Legal Principles

Whether the evidence is sufficient to support a lawful use of force instruction is a question of law that we review de novo.[3] *State v. Fisher*, 185 Wn.2d 836, 849, 374 P.3d 1185 (2016)

---

[3] Gullotto argues that the trial court *abused its discretion* in declining to instruct the jury on defense of another. But the trial court declined to instruct the jury on his theory of the case because it concluded that Gullotto lacked any objectively reasonable basis to act under the circumstances present. In other words, it found insufficient evidence to support that affirmative defense; therefore, our review is de novo. *See State v. George*, 161 Wn. App. 86, 95, 249 P.3d 202 (2011).

(stating rule for self-defense). In deciding whether such an instruction should have been given, we view the evidence in the light most favorable to the defendant. *Id*.

"A criminal defendant is entitled to an instruction on his or her theory of the case if the evidence supports the instruction." *State v. Werner*, 170 Wn.2d 333, 336, 241 P.3d 410 (2010). As explained above, a defendant is entitled to a defense of another instruction if there is "some evidence" demonstrating defense of another. *Marquez*, 131 Wn. App. at 578. Although the "some evidence" threshold is a low burden, it is not nonexistent. *Tullar*, 9 Wn. App. 2d at 156. "For the jury to be instructed on [lawful use of force], the defendant must produce some evidence regarding the statutory elements of that defense." *Id*.

In Washington, the use of force is lawful when "used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary." RCW 9A.16.020(3). "Because self-defense [or defense of another] is a lawful act, it negates the mental state and the 'unlawful force' element[] of [assault in the second degree]." *Tullar*, 9 Wn. App. 2d at 156 (quoting *State v Acosta*, 101 Wn.2d 612, 616-18, 683 P.2d 1069 (1984)).

As explained above, the trial court must evaluate evidence of lawful use of force "from the standpoint of a reasonably prudent person who knows all the defendant knows and sees all the defendant sees." *Read*, 147 Wn.2d at 242. This analysis involves both subjective and objective components. *Id*. at 242-43. Therefore, to warrant a lawful use of force instruction, there must be "[s]ome evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force is required to show that the defendant had reasonable grounds to believe there was imminent danger of [injury]." *Walker*, 40 Wn. App. at 663 (addressing self-defense).

Defense of another has other limitations. Specifically, a defendant's use of force is justifiable to protect a third party from injury when: (a) the defendant would be justified in using force to defend himself or herself against the same injury being threatened against the third party; (b) under the circumstances as understood by the defendant, the third party would be justified in using force to protect himself or herself; and (c) the defendant believes that the intervention is necessary to protect the third party. *State v. Penn*, 89 Wn.2d 63, 66, 568 P.2d 797 (1977). In addition, the defendant's apprehension of danger must be reasonable under the circumstances. *Id*.

B.      The Trial Court did Not Err by Denying a Defense of Another Instruction

Here, the evidence is insufficient to support a defense of another instruction because there is no evidence that Mikesell was about to injure Smith. RCW 9A.16.020(3). The evidence demonstrated that Mikesell and Smith were engaged in a verbal confrontation and were standing toe-to-toe. But there was no evidence that Mikesell had any weapons on his person or that he made any offensive gestures towards Smith during the incident. Specifically, the evidence demonstrated that Mikesell's hands were down to his side. Additionally, there is no evidence that Mikesell threatened injury against Smith in their verbal confrontation. In fact, Bradbury testified that Gullotto never indicated that "Mikesell had made any threats right before he hit him" or that "there was an imminent threat to somebody else's safety before he hit [] Mikesell," when he gave his official statement. RP at 125.

As explained above, there must be "[s]ome evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force is required to show that the defendant had reasonable grounds to believe there was imminent danger of [injury]." *Walker*, 40 Wn. App. at 663. But because there is no evidence of any aggressive or threatening behavior, gesturing, or communication by Mikesell during the confrontation, no reasonable person in

15

Gullotto's shoes could have perceived that Mikesell was about to injure Smith under the circumstances. *See Penn*, 89 Wn.2d at 66.

Even if Mikesell had pushed Smith around on prior occasions, that does not support a belief on Gullotto's part that, at the time, Smith was in imminent danger of being assaulted. There was simply no evidence of *any* objective threat of imminent injury to Smith, as explained above. *Walker*, 40 Wn. App. at 663.

The fact that there was no threat of imminent injury also dispenses with Gullotto's reliance on *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983). In *McCullum*, the defendant stabbed the victim in a Seattle cocktail lounge and claimed self-defense. 98 Wn.2d at 486-87. In that case, there was evidence that the defendant knew that: the victim had a gun; the victim had threatened to shoot the defendant in the past; and on the day of the incident, the victim made a movement towards his jacket where the defendant believed the victim kept the gun. *Id*. at 489. Based on those facts, the Supreme Court held that a self-defense instruction was warranted. *Id*. But in this case, as discussed above, there was no verbal threat and no gesturing to suggest any threat of imminent injury towards Smith. Accordingly, we conclude that Gullotto's reliance on *McCullum* is misguided.

In sum, because no reasonable person in Gullotto's position could conclude, under the circumstances, that Mikesell was about to injure Smith, there is insufficient evidence to support a defense of another instruction. *See Fisher*, 185 Wn.2d at 849. Therefore, we hold that the trial court did not err by denying Gullotto's request for a defense of another jury instruction.

III.    SELF-DEFENSE JURY INSTRUCTION

Gullotto argues that the trial court erred by denying his self-defense instruction because "a reasonable person could have perceived Mikesell's 'fuck off or die' statement as a threat of imminent harm." Br. of Appellant at 33. We disagree.

A.    Legal Principles

As discussed above, whether the evidence is sufficient to support a self-defense or defense of another instruction is a question of law that we review de novo. *See Fisher*, 185 Wn.2d at 849 (stating rule for self-defense). In deciding whether such an instruction should have been given, we view the evidence in the light most favorable to the defendant. *Id*.

"For the jury to be instructed on self-defense, the defendant must produce some evidence regarding the statutory elements of that defense." *Tullar*, 9 Wn. App. 2d at 156. As discussed above, the use of force is lawful when "used by a party about to be injured, or by another lawfully aiding him or her, in preventing or attempting to prevent an offense against his or her person . . . in case the force is not more than is necessary." RCW 9A.16.020(3). Under this statute, self-defense is lawful and justified where the defendant has a "'subjective, reasonable belief of imminent harm from the victim.'" *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020) (quoting *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009)). Accordingly, to warrant a self-defense instruction, there must be "[s]ome evidence of aggressive or threatening behavior, gestures, or communication by the victim before defendant's use of force is required to show that the defendant had reasonable grounds to believe there was imminent danger of [injury]." *Walker*, 40 Wn. App. at 663.

17

"[A] trial court need not instruct the jury on self defense or defense of another if no reasonable person in the defendant's shoes could have perceived a threat of . . . [imminent] injury." *Marquez*, 131 Wn. App. at 577.

B.       The Trial Court did Not Err by Denying the Self-Defense Instruction

Here, the evidence is insufficient to support a self-defense instruction because there is no evidence that Mikesell was about to imminently injure Gullotto. The evidence demonstrated that Mikesell was at the top of the St. Mary's church steps when Gullotto walked up to ask what he had taken out of Smith's tent. Gullotto testified that Mikesell was "within arm's reach" when he told Gullotto to "fuck off or die." RP at 149. However, Mikesell was not facing Gullotto when he said "fuck off or die," but was "side-by-side" to him. RP at 149. Additionally, the evidence demonstrated that Gullotto is a substantially larger man than Mikesell. Mikesell did not have any weapons on his person nor did he make any offensive gestures towards Gullotto during the altercation. In fact, the evidence demonstrated that Mikesell's hands were down to his side. And, as discussed above, Bradbury testified that Gullotto did not indicate that "Mikesell had made any threats right before he hit him" when he gave his official statement. RP at 125.

Although Gullotto may have subjectively perceived Mikesell's "fuck off or die" statement as a threat to his life, no reasonable person in his shoes could have perceived that statement as an imminent threat of injury based on the facts above. *Walker*, 40 Wn. App. at 663. And because no reasonable person could have perceived a threat of imminent injury if placed in Gullotto's shoes, the trial court did not err by declining to instruct the jury on self-defense. *Marquez*, 131 Wn. App. at 577. Accordingly, we affirm Gullotto's conviction for assault in the second degree.

IV.   COMMUNITY CUSTODY SUPERVISION FEES

Gullotto argues that the trial court erred by imposing community custody supervision fees after finding him indigent.  Specifically, Gullotto contends that the trial court clearly intended to waive all discretionary LFOs, and therefore, we should remand his judgment and sentence to strike the erroneously imposed supervision fees.

RCW 9.94A.703(2)(d) states that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to: . . . [p]ay supervision fees as determined by [DOC]."  Because supervision fees are waivable by the trial court, they are discretionary LFOs. *Spaulding*, 15 Wn. App. 2d at536.

Here, the judgment and sentence section imposed supervision fees as determined by DOC as a condition of community custody.  However, at sentencing, the following exchange took place:

> [The State]: Waive all legal financial obligations, Your Honor?
> [The Court]: No.  *Mandatory only.  Wait.  You asked me if I'm going waive them?  Yes.*
> [The State]: Okay.  Thank you.

RP at 204 (emphasis added).  Based on the above, it appears that the trial court intended to waive all discretionary LFOs, which would include the community custody supervision fees.  However, the trial court nevertheless imposed the community custody supervision fees.  During the pendency of this appeal, our Supreme Court issued its opinion in *State v. Bowman*, 198 Wn.2d 609, 498 P.3d 478 (2021), addressing, *inter alia*, procedural error in imposing legal financial obligations.  Because the trial court did not have the benefit of the *Bowman* decision at the time of sentencing, we remand for the trial court to reconsider the community custody fee under this recent authority.

19

## CONCLUSION

We affirm Gullotto's conviction for assault in the second degree and remand to the trial court to reconsider the community custody supervision fee provision from his judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Cruser, P.J.

Price, J.